# United States Court of Appeals
## For the First Circuit

No. 02-2704

UNITED STATES OF AMERICA,

Appellee,

v.

GUILLERMO MANSUR-RAMOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

Carlos Lugo-Fiol and Saldaña, Saldaña-Egozcue & Vallecillo, PSC on brief for appellant.
H.S. Garcia, United States Attorney, Sonia I. Torres, Chief, Criminal Division, and Thomas F. Klumper, Assistant United States Attorney, on brief for appellee.

October 28, 2003

**SELYA**, **Circuit Judge**.  In this sentencing appeal, defendant-appellant Guillermo Mansur-Ramos labors to persuade us that the district court erred in imposing too long a term of immurement and, to make matters worse, attaching an impermissible condition of supervised release to his sentence.  Finding his arguments unconvincing, we affirm the sentence.

The facts are sordid, but straightforward.  We derive them from the change-of-plea colloquy, the presentence investigation report, and the transcript of the disposition hearing.  See United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

At all times relevant hereto, the appellant worked as a police officer assigned to the tactical operations division in Ponce, Puerto Rico.  He exploited his position to enter into illegal arms trafficking.  When he attempted to sell weapons to a potential customer who was in fact a government informant, federal agents surveilled and videotaped several ensuing meetings.

On February 21, 2001, the appellant sold the informant a .22 caliber long rifle for $500.  He bragged that he obtained the weapon through a seizure made under the guise of official police business.  During this recorded meeting the informant emphasized, and the appellant clearly understood, that drug kingpins with whom he was in contact wanted "larger" weapons.  Speaking to this point,

the appellant described his continuing efforts to locate high-powered firearms, particularly AK47s and AR15s.

At a follow-up meeting held on March 5, 2001, the appellant sold the informant a .38 caliber revolver for $260. The appellant boasted that he had procured the gun by assaulting a man on the street, striking him over the head with the barrel of his pistol and robbing him. The appellant again assured the informant that his search for deadlier weapons continued.

The third meeting with which we are concerned took place on March 26, 2001. At that time, the appellant sold the informant a .38 caliber revolver for $500. The appellant had acquired this firearm by means of another illegal seizure.

In due season, a federal grand jury returned a twelve count indictment against the appellant. After some preliminary skirmishing (not relevant here), the appellant pled guilty to five counts of the indictment, namely, (i) interfering with commerce by robbery in violation of 18 U.S.C. § 1951, (ii) possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k), and (iii) three counts of selling stolen firearms in violation of 18 U.S.C. §§ 922(j), 924(a)(2). As part of the plea agreement, both sides agreed to recommend a guideline sentencing range (GSR) of 70-87 months (offense level 27/criminal history category I). The government reserved the right to argue for the

high end of the range and the appellant reserved the right to argue for the low end.

At the disposition hearing, the district court sentenced the appellant to an 80-month incarcerative term, to be followed by three years of supervised release. In addition to the standard conditions of supervised release, the court attached a special condition requiring the appellant to provide the probation department with evidence demonstrating that he was filing income tax returns with the Puerto Rico Department of Treasury as required by law.

This timely appeal followed. In it, the appellant asseverates that the sentencing court erred (i) in choosing a sentence above the low end of the GSR, and (ii) in imposing an impertinent condition of supervised release.

We turn first to the district court's choice of an 80-month term of immurement. In selecting that figure, the court enumerated five considerations. First, the appellant's actions were antithetical to his role as a police officer (a person sworn to guard against the commission of crime). Second, unauthorized arms trafficking is per se illegal. Third, the appellant engaged in the sale of weapons knowing that they were intended for use by drug kingpins. Fourth, one gun sold by the appellant had an obliterated serial number. Fifth, the appellant had displayed a propensity for violent behavior. Despite his failure to object

-4-

below, the appellant now terms unfounded the district court's inference that the weapons in question were intended for use by drug kingpins and contends that the court violated his right to due process by basing its sentencing determination on that material misstatement of fact. This contention lacks force.

A district court is not required to cite any reason for sentencing a defendant within a properly-constructed GSR that spans no more than 24 months. See 18 U.S.C. § 3553(c). Here, the parties concur both that the GSR itself was properly calculated and that it spanned a period of only 17 months. Because Congress does not require sentencing courts to offer any reason for within-the-range choices in such cases, it would seem odd to say that Congress wants appellate courts to review the sufficiency of each and every reason cited by a district court in support of a within-the-range sentence. Consistent with the statutory structure, we have held, with a regularity bordering on the echolalic, that when a district court imposes a sentence within the guideline range, the court of appeals ordinarily lacks authority to scrutinize the rationale for that sentence. See United States v. O'Connell, 252 F.3d 524, 529-30 (1st Cir. 2001) (collecting cases). Our sister circuits have uniformly adopted the same position. See, e.g., United States v. Owens, 308 F.3d 791, 795 (7th Cir. 2001); United States v. Woodrum, 959 F.2d 100, 101 (8th Cir. 1992); United States v. Garcia, 919 F.2d 1478, 1479 (10th Cir. 1990).

Despite this general rule, we have left open the question of whether appellate jurisdiction exists to review a sentence that is within the applicable GSR but allegedly violative of due process because it is premised upon a material misstatement of fact. See O'Connell, 252 F.3d at 530 n.2. We can envision situations in which a sentencing court's misapprehension of a material fact might implicate due process concerns and thus require vacation of such a sentence. See, e.g., United States v. DeWire, 271 F.3d 333, 340 n.8 (1st Cir. 2001) (suggesting that such a need might arise if trial court had mistaken the defendant for someone else); United States v. McDavid, 41 F.3d 841, 844 (2d Cir. 1995) (vacating sentence because trial court mistakenly believed defendant was on probation at the time he committed the offense of conviction); United States v. Nichols, 979 F.2d 402, 409 (6th Cir. 1993) (suggesting that appellate jurisdiction would exist where a defendant raised a colorable constitutional challenge to the sentence); cf. United States v. Romolo, 937 F.2d 20, 24 n.4 (1st Cir. 1991) (noting that even standardless prosecutorial discretion cannot be exercised so as to contravene constitutionally protected rights, such as race or religion).

Although this question is interesting, we need not definitively answer it here. Not every bevue sinks to the level of a due process violation, see, e.g., United States v. Pighetti, 898

F.2d 3, 5 (1st Cir. 1990), and this case fails to present even a colorable claim of constitutional error.

In the first place, we doubt that any error occurred. After all, a sentencing court is not restricted to direct evidence, but may base its findings on reasonable inferences from the record as a whole. See United States v. Cunningham, 201 F.3d 20, 26 (1st Cir. 2000); United States v. Jones, 997 F.2d 967, 970 (1st Cir. 1993). This principle is apposite here. Although the record reflects no direct statement by the appellant indicating his knowledge that the weapons he was peddling would wind up in the hands of drug kingpins, the record makes manifest that the informant wanted arms for drug lords — and the appellant knew as much. And, moreover, there were numerous other allusions to "drug kingpins" or the equivalent during the conversations between the two men. Taken in context, these references adequately support the district court's conclusion that the end users of the firearms were likely to be persons engaged in large-scale drug trafficking.

In the second place, we doubt the materiality of the finding. Fairly read, the record belies the appellant's assertion that the district court relied solely on the "drug kingpin" inference. To the contrary, the court cited no fewer than four other facts that influenced its sentencing determination — and the appellant does not challenge the provenance of any of those facts. Under these circumstances, we are at a loss to see how the

appellant's due process rights were transgressed by a sentencing judge who plainly believed that the appellant's overall conduct, whether or not described with laser-like precision, merited a sentence somewhat above the low end of, but nonetheless within, the GSR.

We move now to the appellant's claim that the lower court erred in requiring him, during the period of supervised release, to produce evidence that he was filing income tax returns in compliance with law. Typically, we review challenges to conditions of supervised release for abuse of discretion. United States v. Brown, 235 F.3d 2, 3 (1st Cir. 2000). Here, however, the appellant failed to object to the imposition of the special condition in the district court. Consequently, our review is for plain error. See United States v. Allen, 312 F.3d 512, 514 (1st Cir. 2002); Brown, 235 F.3d at 3.

In order to surmount the high hurdle posed by plain error review, the appellant must show, at a bare minimum, "an obvious and clear error under current law that affected his substantial rights." Brown, 235 F.3d at 4. Even if close perscrutation reveals such an error, the reviewing court may disregard it if the error does not "seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993).

The appellant asserts that the challenged condition is not reasonably related to the offenses of conviction. This assertion overlooks the breadth of a sentencing court's discretion to custom-tailor conditions of supervised release that reasonably respond to a wide variety of considerations. These include "(1) the defendant's offense, history and characteristics; (2) the need for adequate deterrence; and (3) the need to protect the public from further crimes of the defendant." United States v. Phaneuf, 91 F.3d 255, 263 (1st Cir. 1996) (citing USSG §5D1.3(b)).

Here, the principal offense conduct — trafficking in illegal weapons — was commercial in nature and, for aught that appears, motivated primarily by greed. Given this circumstance, the district court had a valid interest in ensuring that the appellant complied with income-reporting requirements after his release from custody. The special condition allows the court, through the probation department, to monitor the appellant's earnings and identify any potential disparity between his income and his lifestyle. Relatedly, it serves to deter the appellant from engaging in schemes similar to the crimes of conviction once he is released from prison by forcing him to account for his income.

We need go no further. The most that can be said for the appellant's position is that the relatedness of the special condition of supervised release is somewhat attenuated. But the

condition is, at the very least, arguably reasonable.  <u>See</u>, <u>e.g.</u>,
<u>United States</u> v. <u>Behler</u>, 187 F.3d 772, 780 (8th Cir. 1999) (holding
that access to financial information was reasonably related to a
defendant's narcotics convictions because financial gain motivated
the underlying crimes).  Because the error — if there is one — is
neither clear nor obvious, the applicable standard of review
defenestrates the appellant's claim.

**<u>Affirmed</u>**.