# United States Court of Appeals
## For the First Circuit

No. 07-2714

UNITED STATES OF AMERICA,

Appellee,

v.

NATHAN GARRASTEGUY,

Defendant-Appellant.

No. 07-2715

UNITED STATES OF AMERICA,

Appellee,

v.

AMOS CARRASQUILLO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Stahl and Howard,
Circuit Judges.

Ryan M. Schiff, with whom John Salsberg and Salsberg & Schneider, were on brief, for appellant Carrasquillo.

Mark W. Shea, with whom Shea and LaRocque, was on brief for appellant Garrasteguy.

Mark T. Quinlivan, Assistant United States Attorney with whom Michael J. Sullivan, United States Attorney and John A. Wortmann, Jr., Assistant United States Attorney, were on brief, for appellee.

———————————————

March 6, 2009

———————————————

**HOWARD**, **Circuit Judge**.  In early 2006, federal and local authorities commenced Operation Brickhouse to combat drug trafficking in the Bromley-Heath Housing Project (Bromley-Heath) located in Jamaica Plain, Massachusetts.  The investigation snared the appellants Amos Carrasquillo and Nathan Garrasteguy through a series of controlled drug purchases executed by a cooperating witness.  Faced with unshakable evidence of their illicit activities, the appellants pleaded guilty to several counts of distributing cocaine base, in violation of 21 U.S.C. § 841, and to conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846.  The issue of the drug weights involved in the offenses, however, was reserved and tried to a jury.[1]

After a six-day trial, at which the appellants presented no evidence, the jury determined that the conspiracy involved between five and twenty grams of cocaine base.  At sentencing, the judge accepted the government's sentencing recommendation, declined to give Carrasquillo any credit for acceptance of responsibility, and sentenced him to 132 months of imprisonment followed by eight years of supervised release.  Garrasteguy received a sentence of

---

[1]The default statutory maximum in crack cocaine cases where the jury does not find a quantity of drugs, or in which the drug quantity is undetectable, is twenty years.  21 U.S.C. § 841(b)(1)(C).  But if a defendant is convicted of possessing at least five grams of cocaine base, the statutory maximum sentence is enhanced to forty years.  21 U.S.C. § 841(b)(1)(B)(iii).

ten years followed by twelve years of supervised release.[2]  As a special condition of supervised release, the sentencing court prohibited the appellants from entering Suffolk County, Massachusetts during the term of his supervised release, without prejudice to their right to return to the sentencing court to seek revision or rescission of this special condition.  See 18 U.S.C. § 3583(e)(2).

Carrasquillo appeals the denial of his acceptance of responsibility credit, and both appellants challenge the special condition of supervised release.  We affirm.

## I.  Acceptance of Responsibility

We begin with Carrasquillo's acceptance of responsibility argument, which, stripped to its essentials, is a request that he be permitted to run with the hares and hunt with the hounds.  In concrete terms, Carrasquillo believes that he is entitled to a two point reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) -- despite having gone to trial regarding drug weight -- because he pleaded guilty to the rest of the indictment.  This claim fails.

During the Rule 11 plea colloquy, the district court

---

[2]Garrasteguy was also denied credit for acceptance of responsibility, but he does not appeal that issue, because such credit cannot reduce his mandatory minimum sentence of 120 months.  Garrasteguy qualifies for a mandatory minimum sentence due to a previous felony conviction for illegal sales of controlled substances.  See 21 U.S.C. § 851.

-4-

advised both defendants of the possibility that if a jury concluded that they were responsible for drug weights sufficient to trigger enhanced penalties, it might not grant either of them any reduction for acceptance of responsibility.  The court stated:

> THE COURT:  Now, again, I don't mean this in any way as a threat, you must understand that if we go to trial . . . and [if] you lose, it's more than five grams, and the government is put to the expense and time of the trial, there are situations, your lawyers will argue them to me, where I should still give some discount.  And I have no hard and fast rule.  But you understand that I'll be keeping in mind that we've spent all the time and expense on a trial and you've been found guilty of more than five grams.  And I will take that into account.  I think under the law I'm required to.

Both defendants indicated that they understood the court's warning.  Despite the court's statement, the defendants proceeded to try to a jury the issue of drug weight.  During the course of this trial, the defendants did nothing more than cross-examine witnesses; the defense rested at the close of the government's case.  Within two hours of receiving the case, the jury returned a verdict finding the defendants responsible for at least five grams of cocaine base.

After trial, the probation department, in its pre-sentence report (PSR), included a recommendation that Carrasquillo be given a two-level reduction in the offense level pursuant to section 3E1.1(a) of the Sentencing Guidelines, bringing Carrasquillo's total offense level to 27.  The government objected, arguing that Carrasquillo's demand for a jury trial on drug weight

not only demonstrated a failure to accept responsibility for the full extent of his conduct, but also falsely denied the extent and nature of the relevant conduct.

At the sentencing hearing, Carrasquillo reiterated his desire for the acceptance of responsibility reduction.[3] The sentencing court considered Carrasquillo's argument, but decided not to credit Carrasquillo with any reduction of the total offense level based on acceptance of responsibility. The court rested its decision primarily on the fact that Carrasquillo did not spare the government from the time and expense of a trial. In reaching this conclusion, the district court remarked that the acceptance of responsibility provision is an "empty sophistry," that should be viewed as a discretionary reduction in the total offense level to reward defendants who spare the government the expense of a trial. ("What [the acceptance of responsibility reduction] is is a discount that is usually granted, it's in my discretion for sparing the government expense.") Carrasquillo's argument on appeal is that the sentencing court's comments constitute a misinterpretation

_____

[3]At sentencing, counsel for Carrasquillo repeated the arguments in favor of the acceptance of responsibility credit contained in the PSR, which he first made in his sentencing memorandum, and emphasized Carrasquillo's position that he was entitled to the acceptance of responsibility credit. ("Even if your Honor's not giving him the acceptance of responsibility, he admitted to that."). Thus, Carrasquillo's claim is preserved. See United States v. Gonczy, 357 F.3d 50, 52 (1st Cir. 2004)(where defendant objects and district court was aware of objection and underlying reasons, sentencing objection preserved for appellate review).

-6-

of the Sentencing Guidelines, and thus the sentencing court misapplied the Guidelines.

We review a sentencing court's determination of whether a defendant accepted responsibility for clear error. United States v. Glaum, 356 F.3d 169, 180 (1st Cir. 2004); United States v. Deppe, 509 F.3d 54, 60 (1st Cir. 2007) ("Recognizing the special difficulty of discerning, on a cold record, whether a defendant's expressions of remorse were in earnest, we review a sentencing court's judgment about acceptance of responsibility for clear error.")(citing United States v. Dethlefs, 123 F.3d 39, 43 (1st Cir. 1997); United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990); U.S.S.G. § 3E1.1, cmt. (n.5)). Nevertheless, we continue to conduct a plenary review of any related legal questions, including the interpretation of the sentencing guidelines. Deppe, 509 F.3d at 60 (citing United States v. Talladino, 38 F.3d 1255, 1263 (1st Cir. 1994)).

The Sentencing Guidelines recognize the "legitimate societal interests" in acceptance of responsibility and therefore allow sentencing judges to provide a measure of leniency to those defendants who accept responsibility for their actions. U.S.S.G. § 3E1.1 cmt. backg'd. The Guidelines therefore dispense credit for acceptance of responsibility in two flavors: a two-point reduction at the discretion of the sentencing court if the defendant "clearly demonstrates acceptance of responsibility for his offense."

U.S.S.G. § 3E1.1(a). And, if, in a serious offense, a defendant accepts responsibility at an early stage of the investigation, a defendant may be eligible for an additional one point reduction in the offense level. U.S.S.G. § 3E1.1(b). This second reduction is available only to defendants who accept responsibility early enough to save the government the time and expense of preparing for trial, and consequently, this further reduction is only available "upon motion of the government." Id.

Defendants are not, however, automatically entitled to even the two-point acceptance of responsibility reduction. United States v. Franky-Ortiz, 230 F.3d 405, 408 (1st Cir. 2000). The onus of proving acceptance of responsibility is on the defendant. Id. (defendant must "demonstrate that he has taken full responsibility for his actions and he must do so candidly and with genuine contrition")(quoting United States v. Saxena, 229 F.3d 1, 9 (1st Cir. 2000)). To prove acceptance of responsibility, a defendant must truthfully admit or not falsely deny the conduct comprising the conviction, as well as any additional relevant conduct for which he is accountable. Glaum, 356 F.3d at 180 (citing U.S.S.G. § 3E1.1, cmt. (n. 1(a))).[4]

---

[4]It should be noted, however that a defendant is not required to volunteer or affirmatively admit relevant conduct beyond the offense of conviction to obtain an acceptance of responsibility reduction. U.S.S.G. § 3E1.1, cmt. (n.1(a)). Similarly, a defendant "may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction" for acceptance of responsibility. Id.

-8-

We have further held that defendants who proceed to trial and put the government to its proof normally do not qualify for any reduction for acceptance of responsibility. Deppe, 509 F.3d at 60; see also U.S.S.G. § 3E1.1, cmt. (n.2). Proceeding to trial, however, does not constitute a per se bar to credit for acceptance of responsibility. Instead, proceeding to trial creates a rebuttable presumption that no credit is available. Deppe, 509 F.3d at 60.

Carrasquillo's argument is that his guilty plea -- rather than the trial -- resulted in his conviction and that his testing of the government's proof regarding drug weight should not alter the fact that in his guilty plea, he accepted responsibility for his actions. Accordingly, he argues that the sentencing court's description of the acceptance of responsibility credit as "an empty sophistry" and the court's further characterization of the credit as an expense calculation demonstrates that the sentencing court misapplied the guidelines.

The government responds that Carrasquillo's challenge to the drug weight required it to introduce evidence regarding all of the elements of the crimes to which Carrasquillo pleaded guilty. Moreover, the government claims that the defendant's rigorous challenge to the drug weight does not evince the candid acceptance of responsibility with "genuine contrition" that is a prerequisite to receiving a reduction. See Franky-Ortiz, 230 F.3d at 408.

In the circumstances of this case, we agree with the government and with the sentencing court's implicit finding that Carrasquillo failed to demonstrate acceptance of responsibility. He went to trial, and yet, he has adduced no evidence to rebut the presumption that his trial with respect to drug weight rendered him ineligible for any acceptance of responsibility-based reduction, nor has he so much as argued against the presumption. Furthermore, his actions in requesting a trial regarding drug weight were not consistent with acceptance of responsibility for relevant conduct. See Glaum, 356 F.3d at 180 (sentencing court did not clearly err where it denied acceptance of responsibility reduction to defendant who offered to plead guilty to conspiracy involving lesser quantum of drugs). See also, e.g., United States v. Acosta, 534 F.3d 574, 580 (7th Cir. 2008) (affirming district court denial of acceptance of responsibility reduction where defendant who pleaded guilty challenged certain factual assertions in PSR); United States v. Annis, 446 F.3d 852, 857-58 (8th Cir. 2006) (affirming district court denial of acceptance of responsibility reduction where defendant pleaded guilty to offense but refused to admit to any drug quantity and challenged reliability of prior statement to authorities).

In a final attempt to gain traction, Carrasquillo argues that the sentencing court's characterizations of the acceptance of

responsibility reduction suggest that the court did not properly apply this provision of the Guidelines.

The acceptance of responsibility reduction acknowledges legitimate societal interests. U.S.S.G. § 3E1.1 cmt., backg'd. The provision also recognizes the longstanding judicial practice of more leniently sentencing defendants who evidence contrition and cooperate with law enforcement. See United States v. Frazier, 971 F.2d 1076, 1084 (4th Cir. 1992). As has been said, acceptance of responsibility provisions recognize and support varied societal interests including the reduction of crime, restitution, early withdrawal from criminal activity, the increased potential for rehabilitation among those who feel and show true remorse for their anti-social act, as well as encouraging judicial and law enforcement economy. Id. at 1084-85 (citing United States v. Belgard, 694 F. Supp. 1488, 1497 (D. Or. 1988)). Thus, the acceptance of responsibility determination does not necessarily reduce to merely an expense calculation, but rather can serve several important societal interests.

As we have noted, the sentencing court did consider the fact that Carrasquillo pleaded guilty, but also balanced that plea against Carrasquillo's pressing of the drug weight issue at trial, in which he challenged the evidence against him. Based on this balancing, the court concluded that Carrasquillo was not entitled

to any credit for acceptance of responsibility.[5]  Regardless of whether the sentencing court acknowledged the all of the varied interests recognized by the acceptance of responsibility credit, the court nevertheless properly denied the credit to Carrasquillo.

## II.  Exclusion From Suffolk County

We now turn to the issue whether the sentencing court could impose a condition of supervised release that prohibited the defendants from entering an entire county during the full term of supervised release.  The breadth and duration of this condition give us pause, but on this record we are unable to conclude that the district court plainly erred in imposing the special condition.

We review a sentencing court's decision to impose special conditions of supervised release for abuse of discretion.  United States v. Riccio, 529 F.3d 40, 48 (1st Cir. 2008).  If, however, a defendant has an opportunity to object to a special condition at sentencing, and stays silent, we review the imposition of a supervised release condition for plain error only.  United States

_____

[5]The district court had previously noted that it had "no hard and fast rule" regarding an acceptance of responsibility reduction if the defendants contested the drug weight at trial, but cautioned the defendants that it would "be keeping in mind that we've spent all the time and expense on a trial and you've been found guilty of more than five grams.  And I will take that into account.  I think under the law, I'm required to."  Thus, while it is true that the district court, in its characterization of the Sentencing Guidelines overlooked differences between the two sections on acceptance of responsibility, one for actual acceptance and the other for early acceptance, nonetheless the basis for denying a downward departure was sound, and the district court certainly did not commit clear error in making such a denial.

-12-

v. Padilla, 415 F.3d 211, 219 (1st Cir. 2005) (en banc); United States v. Perazza-Mercado, 553 F.3d 65, 74 (1st Cir. 2009); Riccio, 529 F.3d at 48.

Carrasquillo claims that he properly preserved his objection to the special condition of supervised release.[6] The government originally requested, in its sentencing memorandum, a special condition of supervised release ordering both defendants to stay outside the City of Boston.[7] In his sentencing memorandum, Carrasquillo objected to the government's proposed condition primarily on constitutional grounds, claiming that the condition would impermissibly impinge on (unspecified) rights protected under the First, Fifth, and Eighth Amendments to the U.S. Constitution, and that the condition would preclude Carrasquillo from being fully involved in raising his young son.

At sentencing, however, the district court appeared far more interested in the special condition of supervised release than Carrasquillo. The district court sua sponte noted that it was not

---

[6]Appellant Garrasteguy claims that he preserved by relying on co-defendant Carrasquillo's objection, weak as it may have been. Given our disposition on the merits, we needn't tarry over Garrasteguy's dubious contention that his claim has not been forfeited.

[7]When it imposed the condition the district court sua sponte and without comment expanded the scope of the condition to include all of Suffolk County, which includes not only the City of Boston, but also the communities of Chelsea, Revere, and Winthrop. Neither the government nor the defendants objected to this enlargement of the scope of the condition.

-13-

familiar with such conditions, and engaged in a dialogue regarding the condition with not only the prosecutor, but also a representative of the probation department to satisfy itself that the condition was reasonable and enforceable.

By contrast, at sentencing, Carrasquillo mentioned the special condition only in passing, and when he did discuss it he noted that the condition was unimportant:

> The other thing I would just comment on very briefly is this issue of whether or not to be in Boston or not be in Boston. Winning that from our standpoint and not getting what we're looking for in terms of the length of incarceration would be a Pyrrhic victory. It's unimportant compared to the amount of time --

Carrasquillo's counsel specifically termed the condition "unimportant" and remained focused on seeking a reduction in his sentence. This amounted to at least a forfeiture of the objection, if not an outright abandonment of it. See United States v. Walker, 538 F.3d 21, 23 (1st Cir. 2008) (describing difference between waiver and forfeiture). Carrasquillo made a strategic decision in making his presentation to the sentencing judge: he focused his efforts on obtaining a lower sentence. In so doing, he essentially left his objections regarding this condition of supervised release by the wayside.

Moreover, even though the defendants now argue that the special condition's geographic scope (all of Suffolk County) was

-14-

impermissibly broad, neither of them advanced a narrower area of exclusion to the sentencing court. Similarly, the defendants were entirely silent regarding the particulars of this condition, including the availability of exceptions, as well as the scope and breadth of the condition. Consequently, the sentencing court did not have the opportunity to evaluate alternatives that might make the exclusion more acceptable. It would be both unfair and an inappropriate deployment of limited judicial resources to permit the defendants to raise such specific concerns on appeal. Cf. United States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991) (holding that defendant cannot challenge a district court's ruling at sentencing with an argument not raised below in the papers or at sentencing). Consequently, we review the condition for plain error only.

District courts have significant flexibility to impose special conditions of supervised release. A district court may impose as a condition of supervised release most discretionary conditions identified in 18 U.S.C. § 3563(b),[8] or any other condition the court deems appropriate. All such conditions, however, must be "reasonably related" to the factors set forth in § 3553(a),[9] may involve "no greater deprivation of liberty than

_____

[8]Specifically, the court can impose any condition set forth in 18 U.S.C. §§ 3563(b)(1) through (b)(10) and (b)(12) through (b)(20).

[9]The factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant, 18

-15-

reasonably necessary" to achieve the purposes of §§ 3553(a)(2)(c), (a)(2)(D), (viz. to protect the public and promote the rehabilitation of the defendant), and must be consistent with any pertinent policy statement of the United States Sentencing Commission. 18 U.S.C. § 3583(d); see also United States v. York, 357 F.3d 14, 20 (1st Cir. 2004).

Any conditions of supervised release that a sentencing court chooses to impose must, of course, be supported by the record. United States v. Scherrer, 444 F.3d 91, 96 (1st Cir. 2006) (en banc). But this requirement can be satisfied without a written or oral explanation of the reasons supporting the condition if we can infer the court's reasoning by comparing what was argued by the parties or contained in the pre-sentence report with what the court did. United States v. Jiminez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc).

The government advanced several reasons for excluding the defendants from the City of Boston. The government noted that the Bromley-Heath project is a refuge of affordable housing for families of modest means, and that it has been beset with an exceedingly high level of gun and drug crimes. The government

---

U.S.C. § 3553(a)(1); (2) the need to afford adequate deterrence to criminal conduct, 18 U.S.C. § 3553(a)(2)(B); (3) the need to protect the public from future crimes of the defendant, 18 U.S.C. § 3553(a)(2)(c); and (4) the need to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner, 18 U.S.C. § 3553(a)(2)(D).

argues that the sentencing court, pursuant to sections 3553(a)(1) and (a)(2)(C), properly took into account the effects of the defendants' offenses on the Bromley-Heath community. Furthermore, the government noted that both defendants had repeatedly disregarded Boston Housing Authority's (BHA) "no-trespass" orders denying them permission to enter Bromley-Heath. Finally, the government noted Carrasquillo ignored a prior state court probation condition ordering him to stay out of all BHA properties. In the face of these orders, the defendants sold crack cocaine several times at or near Bromley-Heath. The government therefore argued that the defendants had to be excluded from a larger geographic area. The sentencing court, without objection from the defendants, appears to have concluded that Suffolk County represents a sufficient geographic exclusion and is administratively feasible to enforce, without elaborating on the deprivation of liberty this exclusion entails.

Although we have never before passed on a special condition of supervised release that bars an individual from entering an entire county, two circuits have upheld similar conditions.[10]   In United States v. Sicher, the Third Circuit

_____

[10]The Sixth Circuit has also upheld a related special condition requiring a defendant, who had a history of 38 prior criminal convictions and who repeatedly violated the conditions of his then pending period of federal supervised release, live in a city away from his home for a period of one year. United States v. Alexander, 509 F.3d 253 (6th Cir. 2007).

-17-

approved, on plain error review, a special condition of supervised release prohibiting the defendant from entering the Allentown, Pa., metro area, which consists of two counties, for a period of ten years.[11]  239 F.3d 289 (3d Cir. 2000).  In reaching this conclusion, the Sicher court relied on two salient considerations.  First, it noted that the sentencing court had relied on ample record evidence demonstrating that the defendant's criminal history was uniquely tied to the mal-influence of her family and associates in Allentown.  Id. at 290.  Second, the special condition of supervised release did not operate as a total banishment because Sicher was free to request permission from her probation officer to visit the counties covered in the supervised release condition. Id. at 292.

Similarly, in United States v. Cothran, the Eleventh Circuit, on an abuse of discretion review, upheld a special condition of probation that prohibited a defendant from entering Fulton County, Georgia during the first two years of probation. 855 F.2d 749, 751 (11th Cir. 1988).  In reaching this conclusion, the Cothran court found several factors persuasive.  First, Cothran could have been sentenced to up to 30 years but received a sixty-six month sentence, all but six months of which were suspended.

---

[11]This condition of supervised release was imposed as part of the district court's decision to grant the defendant's motion for a sentence modification pursuant to 18 U.S.C. § 2255, which reduced the defendant's six-year sentence to time served (approximately 10 months).  Sircher, 239 F.3d at 290.

Id. at 750. In addition, the Cothran court relied on the district court's finding that Cothran, a charismatic twenty-six year-old, was popular with adolescents in his native Fulton County and had been convicted of willfully distributing cocaine to a minor. Id. Finally, the probation condition at issue in Cothran permitted Cothran to enter Fulton County with the permission of his probation officer, and contemplated the possibility that Cothran could reach an arrangement with his probation officer to permit repeated entry into certain portions of the county for educational or employment purposes. Id. at 752. On those facts, the Cothran court found that the district court's probation condition was not an abuse of discretion.

The cases permitting exclusion from a defined geographical area do not entirely ease our doubts about the breadth and duration of the supervised release condition imposed here. Most courts have not authorized a blanket exclusion from a particular area lasting as long as the exclusions in the present case (eight and twelve years). Moreover, such conditions have tended to be imposed after a substantial reduction of a defendant's sentence, which also did not occur here.

We are even more uneasy over the fact that the condition in this case is not subject to any qualification. Exclusion conditions approved elsewhere have permitted defendants to seek authorization from probation officers for entry into the

-19-

geographical areas from which the defendants are excluded.  Here, however, the sentencing court imposed an unqualified banishment from Suffolk County for a period of as long as twelve years with only the possibility of seeking a modification of the condition from the court itself at some later date, pursuant to section 3583(e).[12]  Given its importance as a government center where a citizen may be required to conduct business with government officials, the defendants could well have significant reasons for entering Suffolk County.  Moreover, at this early juncture, it is impossible to ascertain the level of either defendant's rehabilitation, which might impact a decision to permit the defendants to enter Suffolk County.

Additionally, the evidence justifying the imposition of the present condition is not as stark as in other cases upholding exclusions.  It is true that Garrasteguy and Carrasquillo had at the time of their convictions previously violated BHA-imposed "no

---

[12]The showing required for a defendant to obtain a modification of a condition of supervised release pursuant to section 3583(e)is an open question in this circuit. Compare United States v. Smith, 445 F.3d 713, 716-17 (3d Cir. 2006) (reviewing district court's modification of supervised release for abuse of discretion and leaving open question of whether "significantly changed or extraordinary" circumstances are prerequisite to modification) with United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)("Section 3583 provides the district court with retained authority to . . . modify terms and conditions [of supervised release] . . . in order to account for new or unforseen circumstances.").
In light of the potential consequences that could flow from a complete inability to enter Suffolk County, a somewhat relaxed showing might suffice to obtain a modification of the supervised release condition here.

trespass" orders at Bromley-Heath, and that Carrasquillo was subject to a wider order prohibiting him from entering any public housing project in Boston. But this case does not include the fulsome record present <u>Sicher</u>, nor do the appellants' records evince the same level of criminality that the Sixth Circuit found sufficient to support a prohibition from entering the defendant's reservation in <u>Alexander</u>. Thus, exclusion from all of Suffolk County could be a large leap, if the sentencing court had evidence regarding the suitability of a more circumscribed geographic boundary.

But the defendants did not offer any of these arguments below, nor did they suggest any alternative, more limited, exclusion boundary to aid the district court in the exercise of its discretion. Therefore, as we have noted, the condition of supervised release is subject only to plain error review, and the condition meets this minimal hurdle. In order to show a district court committed plain error, a defendant must demonstrate (1) the existence of an error; (2) that it is plain; (3) that such plain error affected substantial rights; and (4) that left uncorrected, such error seriously affects the fairness integrity or public reputation of judicial proceedings. <u>United States</u> v. <u>Carrasco</u>, 540 F.3d 43, 42 (1st Cir. 2008); <u>see also</u> <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 732 (1993).

Although it is axiomatic that the constitutional rights of supervised releasees and probationers are limited, United States v. Knights, 534 U.S. 112, 119 (2001), such individuals, by virtue of their status, do not forfeit all of their constitutional rights. Yet, even assuming that exclusion from all of Suffolk County for a lengthy period would unjustifiably impinge the defendants' fundamental rights, we cannot conclude that leaving the imposed condition intact would bring judicial proceedings into public disrepute. The record, which indicates that both defendants have committed several criminal offenses, including drug offenses at Bromley-Heath, and further that both defendants have violated prior "no trespass" orders with respect to Bromley-Heath, provides some support for the condition of supervised release. Moreover, this condition expressly preserves the defendants' ability to return to the district court for modification of the condition. The condition does not constitute a miscarriage of justice.

Accordingly, we affirm the denial of credit for acceptance of responsibility with respect to defendant Carrasquillo, and, noting again that the supervised release condition is without prejudice to their rights to petition for modification of the condition, we affirm the condition of supervised release with respect to both defendants.

It is so ordered.