# United States Court of Appeals
## For the First Circuit

No. 15-1962

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ COLÓN DE JESÚS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Selya and Barron,
Circuit Judges.

Arza Feldman and Feldman and Feldman on brief for appellant.
Leslie R. Caldwell, Assistant Attorney General, Sung-Hee Suh, Deputy Assistant Attorney General, Richard A. Friedman, Appellate Section, Criminal Division, United States Department of Justice, Rosa E. Rodríguez-Vélez, United States Attorney, and Nelson Pérez Sosa, Assistant United States Attorney, on brief for appellee.

July 29, 2016

**SELYA**, **Circuit Judge**. Defendant-appellant José Colón de Jesús challenges both the substantive reasonableness of his upwardly variant sentence and a financial disclosure condition incident to his supervised release term.[1] After careful consideration, we summarily affirm.

## I. BACKGROUND

Because this appeal follows a guilty plea, we draw the facts from the non-binding plea agreement (the Agreement), the undisputed portions of the presentence investigation report (the PSI Report), and the transcript of the disposition hearing. See United States v. Bermúdez-Meléndez, ___ F.3d ___, ___ (1st Cir. 2016) [No. 14-2209, slip op. at 1]. On July 28, 2013, Puerto Rico police officers observed an individual, later identified as the appellant, riding a horse toward them at high speed, with a firearm in his waistband. After he fell from his steed, the officers took him into custody and confiscated the firearm, which proved to be loaded with 16 rounds of ammunition. Upon a search incident to his arrest, the officers discovered two additional 15-round magazines (fully loaded). Moreover, the appellant acknowledged that the seized firearm had been modified to fire automatically as a machinegun.

---

[1] The spelling of the appellant's name is inconsistent throughout relevant documents. For simplicity's sake, we have settled on a single spelling.

In due season, a federal grand jury returned a two-count indictment. Count 1 charged the appellant with knowingly possessing a firearm and ammunition after having been convicted of a felony. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). Count 2 charged the appellant with knowingly possessing a machinegun. See id. § 922(o)(1). After initially maintaining his innocence, the appellant entered into the Agreement and tendered a guilty plea to count 1.

Pertinently, the Agreement memorialized the parties' joint recommendation that the appellant should be sentenced near the middle of the applicable guideline sentencing range (GSR). The district court subsequently accepted the appellant's plea to count 1.[2]

At sentencing, the court — without objection — adopted the calculations adumbrated in the PSI Report, which resulted in a GSR of 30-37 months (based on a total offense level of 17 and a criminal history category of III). Despite the parties' joint recommendation for a mid-range guideline sentence, the court varied upward and imposed a 60-month term of immurement, to be followed by a three-year term of supervised release. This timely appeal followed.

---

[2] Pursuant to the Agreement, the district court later dismissed count 2.

## II. ANALYSIS

In this venue, the appellant advances two assignments of error. First, he asserts that his 60-month incarcerative sentence, though only one-half the statutory maximum sentence, see id. § 924(a)(2), is substantively unreasonable. Second, he asserts that the district court erred in attaching a financial disclosure condition to his supervised release term. We discuss each assignment of error in turn.

### A. **The Length of the Sentence.**

The appellant challenges his sentence as substantively unreasonable, suggesting that the mid-range guideline sentence limned in the Agreement would have been sufficient. Because the appellant voiced this objection at the disposition hearing, our review is for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007).

When mulling a challenge to the substantive reasonableness of a sentence, considerable deference is due to the district court's judgment. See id.; United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). This respectful approach recognizes that even though "[a] sentencing court is under a mandate to consider a myriad of relevant factors, . . . the weighting of those factors is largely within the court's informed discretion." Clogston, 662 F.3d at 593. It follows that even where — as in this case — the district court imposes a variant

- 4 -

sentence, a reviewing court must afford "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51.

Reasonableness is itself "a protean concept." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). In the last analysis, a sentence will withstand a challenge to its substantive reasonableness as long as it rests on "a plausible sentencing rationale" and reflects "a defensible result." Id. at 96. Applying this yardstick, we will vacate the sentence "if — and only if — the sentencing court's ultimate determination falls outside the expansive boundaries of [the] universe" of reasonable sentences. Id. at 92.

Here, the district court articulated a plausible sentencing rationale. It took pains to note its consideration of the factors made relevant by 18 U.S.C. § 3553(a) and commented upon specific factors that applied to the appellant's situation. The court also considered the appellant's prior criminal history (which was significant and included convictions for similar offenses). Describing that history, the court concluded that the appellant "knew clearly the consequences [of weapons violations] and still . . . didn't learn the lesson."

After conducting this assessment, the court explicitly determined that the guideline range did not "fully reflect the seriousness of the offense, the risk and harm to society, nor what

has happened here."  Stressing the need for deterrence, the court concluded that an appropriate sentence demanded an upward variance.

The resultant sentence surpassed the top of the GSR by 23 months.  Such a sentence is admittedly stern.  But a stern sentence may still fall within the universe of reasonable sentences, though we have recognized that the greater the extent of a variance, "the more compelling the sentencing court's justification must be."  United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014).

Here, the district court adequately justified the sentence.  As the court noted, there were aggravating factors, including the appellant's recidivism, the especially menacing nature of the firearm in question (which to the appellant's knowledge had been deliberately modified to function as a machinegun), and the extra magazines that the appellant carried. Equally as important, the court tied the upward variance to specific section 3553(a) factors.  See United States v. Díaz-Arroyo, 797 F.3d 125, 130 (1st Cir. 2015); United States v. Scherrer, 444 F.3d 91, 92-93 (1st Cir. 2006) (en banc).  On balance, we think that the court's sentencing rationale is plausible, that the end result (a 60-month sentence) is defensible, and that, therefore, the sentence is within the broad compass of the court's discretion.

In an effort to blunt the force of this reasoning, the appellant argues that the district court abused its discretion in lending societal factors, such as the crime rate in Puerto Rico, undue weight in the sentencing calculus. This argument cannot carry the day: "[w]e have squarely held that a district court may consider community-based and geographic factors in formulating its sentence." Bermúdez-Meléndez, ___ F.3d at ___ [No. 14-2209, slip op. at 4]. Because community-based considerations, such as the local crime rate, "are inextricably intertwined with deterrence," it was not an abuse of discretion for the district court to use the Puerto Rican crime rate as one of several integers in the sentencing calculus. United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013).

So, too, the appellant's emphasis on the parties' joint sentencing recommendation (which the district court spurned) is misplaced. When faced with a challenge to the substantive reasonableness of a sentence, a reviewing court must focus its inquiry on the sentence actually imposed, not on the relative merit of that sentence as contrasted with a different sentence mutually agreed to by the parties. Cf. Bermúdez-Meléndez, ___ F.3d at ___ [No. 14-2209, slip op. at 3] ("Although a sentencing court typically has a duty to explain why it selected a particular sentence, it has 'no corollary duty to explain why it eschewed other suggested sentences.'" (quoting United States v. Vega-

Salgado, 769 F.3d 100, 104 (1st Cir. 2014))). Consequently, we have no need to ponder the desirability vel non of the sentence recommended by the parties but eschewed by the sentencing court.[3]

To sum up, a sentencing court has wide discretion in how it chooses to weigh the section 3553(a) factors in any given case. See United States v. Zapata-Vázquez, 778 F.3d 21, 24 (1st Cir. 2015). "[T]here is no stringent mathematical formula that cabins the exercise of the sentencing court's discretion." Martin, 520 F.3d at 91-92. Those principles control here: though the upward variance imposed by the district court is significant, it does not, on this record, warrant a finding that the sentence is substantively unreasonable. See, e.g., United States v. Rivera-González, 776 F.3d 45, 52 (1st Cir. 2015); Flores-Machicote, 706 F.3d at 25.

### B. Supervised Release.

Next, the appellant challenges a financial disclosure condition that the district court imposed as a special condition ancillary to his supervised release term. Since he did not contemporaneously object to the imposition of this condition, our review is for plain error. See United States v. Garrasteguy, 559 F.3d 34, 40 (1st Cir. 2009). Under this rigorous standard, an

---

[3] In all events, the district court — although it had no duty to do so — provided a reasoned explanation as to why the sentence recommended by the parties did not adequately respond to the nature and circumstances of the offense of conviction.

appellant must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

The challenged condition obligates the appellant, during his supervised release term, to "provide the Probation Officer access to any financial information upon request." This financial disclosure condition is not a standard condition of supervised release. See 18 U.S.C. §§ 3583(d), 3563(b). Yet, "[a] sentencing court is authorized to impose any condition of supervised release that is reasonably related to one or more of the permissible goals of sentencing." United States v. Mercado, 777 F.3d 532, 537 (1st Cir. 2015). That compendium of goals includes "deterrence, rehabilitation, and protection of the public." Id. By the same token, a condition of supervised release may be related to the offender's educational or vocational progress. See United States v. Prochner, 417 F.3d 54, 63 (1st Cir. 2005); United States v. York, 357 F.3d 14, 20 (1st Cir. 2004). But there are limits: a special condition of supervised release must be reasonably related to the factors enumerated in 18 U.S.C. § 3553(a) and must not deprive the offender of a greater degree of liberty than is

reasonably required. See 18 U.S.C. § 3583(d); see also Garrasteguy, 559 F.3d at 41.

We find no plain error in the district court's imposition of the financial disclosure condition attached to the appellant's supervised release term.[4] While the district court did not articulate its rationale for imposing the special condition — most likely a consequence of the lack of any contemporaneous objection — an unexplained condition of supervised release may be upheld as long as the basis for the condition can be inferred from the record. See Garrasteguy, 559 F.3d at 42.

Here, the court's reasoning can be gleaned from the materials before the sentencing court and the context of the proceedings. The supervised release order specifically required the appellant to "support his . . . dependents" and "work regularly at a lawful occupation." The financial disclosure condition complements these conditions: it allows the probation officer to monitor the money the appellant is earning and spending, which aids the probation officer in keeping tabs on the appellant's rehabilitation (including his compliance with his support and employment obligations). So viewed, the condition is reasonably

---

[4] We note that the appellant has not explained how — if at all — compliance with the financial disclosure condition would be unduly burdensome. Should any complications arise in practice, the appellant can at that time seek relief in the district court. See 18 U.S.C. § 3583(e)(2); see also Mercado, 777 F.3d at 539.

related to the legitimate objectives of supervised release and, thus, the legitimate objectives of sentencing.  See United States v. Smith, 436 F.3d 307, 311-12 (1st Cir. 2006); United States v. Mansur-Ramos, 348 F.3d 29, 33 (1st Cir. 2003).

The appellant demurs.  His rejoinder begins with the unassailable premise that his financial information is irrelevant to the offense of conviction itself.  He then restates the obvious: he was neither fined nor ordered to pay restitution.  Finally, he submits that the condition had no relevance to him because the PSI Report indicated that he had no assets.  These circumstances, he says, coalesce to render the financial disclosure condition unreasonable.  We think not.

A special condition of supervised release may be imposed even if it is unrelated, or only tangentially related, to the offense of conviction.  See York, 357 F.3d at 20; Mansur-Ramos, 348 F.3d at 33.  Nor is there any precedent for the proposition that a financial disclosure condition can only be imposed in a case in which the sentence includes a financial component (such as a fine or an order for restitution).  Cf. United States v. Meléndez-Santana, 353 F.3d 93, 107 (1st Cir. 2003) (upholding financial disclosure condition notwithstanding absence of fine or restitution order).  We see no justification for any such ironclad rule, and we therefore hold that a financial disclosure condition sometimes may be attached to a supervised release term even when

- 11 -

the offender's sentence does not itself include a financial component (such as a fine or an order for restitution).  This is such a case.

We add, moreover, that the fact that the appellant may have been impecunious at the time of sentencing does not alter the equation.  After all, the standard conditions of his supervised release (set forth above) require him, once he starts serving his supervised release term, to support his dependents and work regularly at gainful employment.  Presumably, then, he will have some earnings at that time.

That ends this aspect of the matter.  Because the appellant has not shown that the financial disclosure condition is unrelated to permissible sentencing goals, he has failed to show that the district court plainly erred in attaching the condition to his supervised release term.  See Mansur-Ramos, 348 F.3d at 33.

**III.  CONCLUSION**

We need go no further.  For the reasons elucidated above, the judgment of the district court is summarily

**Affirmed.**  See 1st Cir. R. 27.0(c)