

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-2000

# United States v. Sicher

Precedential or Non-Precedential:

Docket 00-1862

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Sicher" (2000). *2000 Decisions.* Paper 251.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/251

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 15, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1862

UNITED STATES OF AMERICA

v.

SHANNON SICHER,
        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 95-cr-0073-8
District Judge: The Honorable Franklin S. VanAntwerpen

Submitted Under Third Circuit LAR 34.1(a)
December 7, 2000

Before: BARRY and COWEN, Circuit Judges, and
WARD,* District Judge

(Opinion Filed: December 15, 2000)

        James F. Brose, Esquire
        Brose Law Firm
        600 N. Jackson Street
        Suite 106
        Media, PA 19063

         Attorney for Appellant

_____
* The Honorable Robert J. Ward, United States District Judge for the
Southern District of New York, sitting by designation.

David E. Fritchey, Esquire
Assistant U.S. Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Attorney for Appellee

OPINION OF THE COURT

BARRY, Circuit Judge.

Shannon Sicher appeals from the District Court's denial of her motion to set aside a special condition of supervised release which prevents her from entering Lehigh and Northampton counties, in Pennsylvania, without per mission from her probation officer. Because that special condition is related to Sicher's history and characteristics, involves no greater deprivation of liberty than is necessary, and is not inconsistent with the pertinent policy statements issued by the Sentencing Commission, we will affirm the order of the District Court.

We shall only review the factual and pr ocedural background of this case as necessary to pr ovide context for the discussion which follows. On May 5, 1995, Sicher pled guilty to one count of conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. S 846 and one count of aiding and abetting the distribution of marijuana near a school in violation of 21 U.S.C. S 860(a). On March 21, 1996, she was sentenced to six years imprisonment followed by ten years supervised release. On July 22, 1998, the District Court granted Sicher's motion to modify her sentence pursuant to 28 U.S.C. S 2255 and r esentenced her to time served and ten years of supervised r elease, subject to certain conditions. The two conditions relevant to this appeal were that she complete the first eight months of her supervised release in a community treatment center, and that she not enter the Allentown area, i.e. Lehigh or Northampton counties, unless given permission to do so by her probation officer. Sicher did not object to either of these conditions when they were imposed.

When the District Court resentenced Sicher , it had before it substantial evidence concerning the conditions under which she was raised and her activities prior to incarceration. This evidence included the r eport of Kirk Heilbrun, Ph.D., a forensic psychologist; Sicher's allegations in support of her S 2255 motion; and the original presentence report. We will not r ecite this tragic history in every detail. It is sufficient to note that when Sicher was as young as nine years old, her family and friends began pushing her towards a life of prostitution, drug use, and other criminal activity. By the age of twelve, she was prostituting herself to support her mother and her mother's drug habit. She used many drugs herself, attempted suicide on several occasions, and was arrested numer ous times as a juvenile and as an adult. When, as a teenager , she made an attempt at reform, her associates quickly pulled her back to a life of crime. When she went to prison, however, she made strong progress towar d turning her life around by completing drug treatment and earning high grades in college classes. In her conversations with Heilbrun, Sicher admitted to experiencing significant anxiety whenever she was in the Allentown area, and she expr essed a desire to "get her kids and move away from Allentown."

After spending approximately six months at a community treatment center in Philadelphia, Sicher violated the terms of her supervised release by associating with a felon and also by visiting one of her co-defendants in Allentown without permission from her probation officer. In January 1999, she was expelled from the treatment center. At a hearing on February 12, 1999, the District Court r evoked the prior order of supervised release and sentenced her to twenty-four months imprisonment, to be followed by eight years of supervised release subject to the conditions previously imposed. Again, Sicher made no objection to the territorial limitation. She appealed, but that appeal was subsequently dismissed with her consent.

On May 24, 2000, Sicher filed a pro se  motion to amend the conditions of supervised release, asking the District Court to remove the restriction that pr ohibited her entry into Lehigh and Northampton counties. She ar gued that the circumstances of her family's life had changed significantly

3

since the restriction was first imposed and she wished to return to her mother's home so that she could care for her mother and her two children. On June 1, 2000, the District Court denied the motion. It is from this denial that Sicher now appeals.

This Court utilizes an abuse of discretion standard when reviewing the imposition of special conditions of supervised release. United States v. Loy , 191 F.3d 360, 369–70 (3d Cir. 1999), cert. denied, 120 S.Ct. 1429 (2000). Because Sicher did not object to the imposition of the territorial limitation or the refusal to set that condition aside, however, the District Court's decision is reviewed for plain error. United States v. Par do, 25 F.3d 1187, 1193 (3d Cir. 1994). Under either standard, we discern no error.

Imposition of supervised release is gover ned by 18 U.S.C. S 3583, which provides, in part, that:

> "[t]he court may order, as a further condition of supervised release, to the extent that such condition --
>
> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
>
> any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and b(12) through b(20), and any other condition it considers to be appropriate.

18 U.S.C. S 3583(d). The relevant sections of S 3553(a) provide that when a district court imposes a sentence, it must consider:

> (1) the nature and circumstances of the of fense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed --
>
> . . . .

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most ef fective manner[.]

Sicher argues that the condition preventing her from entering Lehigh and Northampton counties is invalid for three reasons. First, she argues, it is not reasonably related to the nature and circumstances of her crime. Second, it involves a greater deprivation of liberty than is reasonably necessary. Third, it is inconsistent with the pertinent policy statements of the Sentencing Commission.

With the reference to her first argument, Sicher seems to be suggesting that a condition of supervised r elease must relate to both the nature of the offense and the circumstances and history of the defendant. Section 3553(a)(1), indeed, uses the word "and" in listing the factors that must be considered by a District Court in imposing sentence. While this Court has not spoken on the issue, other circuits have determined that despite the presence of the word "and," it is not necessary for all of the factors identified in S 3553(a) to be present before a special condition of supervised release may be imposed. See, e.g., United States v. Kent, 209 F.3d 1073, 1076 n.3 (8th Cir. 2000) ("[t]he special condition imposed need not be related to each and every one of the factors"); United States v. Abrar, 58 F.3d 43, 46 (2d Cir. 1995) ("a condition may be imposed if it is reasonably related to any one or more of the specified factors"); United States v. Johnson, 998 F.2d 696, 698 (9th Cir. 1993) (the language of S 3553(a) offers "a list of factors to guide the district court's discr etion rather than a checklist of requisites, each of which must be found before any condition of supervised release may be prescribed"). No circuit has held otherwise.

There was ample evidence that if Sicher wer e to return to the location and associates that shaped her youth, she would be extremely likely to retur n to a life of crime. Thus, the special condition disputed here is r elated to "the history

5

and characteristics of the defendant," and also serves to promote rehabilitation consistent withS 3553(a)(2)(D). The Eleventh Circuit has upheld a similar condition that had the same effect. See United States v. Cothran, 855 F.2d 749 (11th Cir. 1988). In Cothran, the defendant's probation was subject to the condition that he remain outside Fulton County, Georgia, unless given permission to enter the county by his probation officer. Id. at 750. Atlanta is located in Fulton County, and the defendant was a popular and charismatic drug dealer in southeast Atlanta. Id. The Cothran court found that the condition was "r easonably related to the protection of the public" and was also "reasonably related to Cothran's r ehabilitation." Id. at 752.

Sicher argues, next, that the special condition imposes a greater deprivation of liberty than is r easonably necessary, in violation of S 3583(d)(2). She asserts that the special condition effectively "banishes" her fr om the two counties comprising the Allentown area, denies her the ability to care for her mother, and forces her to either abandon her children or relocate them. She claims that banishment is generally considered to be illegal, pointing to several cases in which courts have struck down penalties of banishment. See United States v. Abushar, 761 F.2d 954 (3d Cir. 1985); McCreary v. State, 582 So.2d 425 (Miss. 1991); Johnson v. State, 672 S.W.2d 621 (Tex. App. 1984); State v. Young, 154 N.W.2d 699 (Minn. 1967). These cases ar e easily distinguished from the case sub judice, however. Most of them involved unconditional banishment from the entire country, Abushar, 761 F.2d at 958, or from an entire state. McCreary, 582 So.2d at 427 (defendant r equired to leave state and only permitted to retur n twice a year to visit his children); Young, 154 N.W .2d at 382-83 (defendant required to "leave Minnesota and never come back her e"). Moreover, while in Johnson the defendant was r equired to "remain and reside outside" one particular county, id. 672 S.W.2d at 622, he "was not to return for any reason." Id. Further, the Johnson court specifically found that the territorial condition on defendant's probation did not"have any relationship to [defendant's] refor mation or rehabilitation." Id. at 623. It was also unrelated to the nature of his original offense, which was "unauthorized use of a vehicle." Id. at 622. Here, Sicher is prohibited from entering two

6

counties. That prohibition is not absolute, however, because she can enter either county with the per mission of her probation officer. Moreover , the territorial limitation is clearly intended to promote her rehabilitation by keeping her away from the influences that would most likely cause her to engage in further criminal activity. In sum, the special condition disputed here is not equivalent to the banishment that was rejected in Abushar and the various state cases.

Certainly, the territorial limitation will have an impact on Sicher's family relationships. She will have to decide whether her children will live with her outside the two counties, or whether they will continue to live with her mother in Allentown. If the children live in Allentown, Sicher's access to them will be limited. It is simply not true, however, that she will never be able to visit them, or will be able to see them only if some other person brings them to her. Rather, she can visit them at any time, with the approval of her probation officer . Similarly, she will not be able to live with and take care of her mother in Allentown, but her mother may be able to live with her outside of the two counties.1 These minor impositions on her liberty are no greater than are necessary to pr omote her rehabilitation by keeping her away from negative, if not wholly disastrous, influences.

Finally, Sicher argues that the special condition at issue here is inconsistent with the applicable policy statements of the Sentencing Commission. In particular, she points to the policy statements relative to U.S.S.G. S 5D1.3(d) and (e), which recommend a variety of special conditions that may be appropriate in certain circumstances. None of these special conditions includes a prohibition on entering a particular geographic area, and Sicher contends that the special condition imposed on her is thus inconsistent with the policy statements. There is no evidence, however, that these policy statements are intended to of fer an exhaustive

_____

1. This Court has no information as to whether Sicher's mother is a convicted felon, and expresses no opinion as to whether Sicher would violate the condition of her supervised release that forbids association with felons if she lived with her mother.

7

list of all possible special conditions. Courts have regularly approved of special conditions not explicitly contained on this list, so long as those conditions met the general requirements of S 3553. See, e.g., United States v. Amer, 110 F.3d 873, 882–83 (2d Cir. 1997) (special condition requiring defendant to effect retur n of children from Egypt); United States v. Phaneuf, 91 F.3d 255, 263 (1st Cir. 1996) (special condition requiring defendant to get probation officer approval before accepting cr edit card or making any purchase over $100); United States v. Chinske, 978 F.2d 557, 560 (9th Cir. 1992) (special condition r equiring defendant to submit to search of person, vehicle, and residence upon request). The fact that the special condition preventing her from entering two counties is not explicitly authorized by the policy statements simply does not cause the condition to be inconsistent with the policy statements.

The decision of the District Court will be affir med.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

8