*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0470p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

                  *Plaintiff-Appellee,*

      *v.*

SHELDON LEE ALEXANDER,

                  *Defendant-Appellant.*

No. 07-1432

———————————

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 04-00037—Robert Holmes Bell, Chief District Judge.

Argued: November 27, 2007

Decided and Filed: December 7, 2007

Before: CLAY, SUTTON, and McKEAGUE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Paul A. Peterson, FEDERAL PUBLIC DEFENDERS, Marquette, Michigan, for Appellant. Paul D. Lochner, ASSISTANT UNITED STATES ATTORNEY, Marquette, Michigan, for Appellee. **ON BRIEF:** Paul A. Peterson, FEDERAL PUBLIC DEFENDERS, Marquette, Michigan, for Appellant. Paul D. Lochner, ASSISTANT UNITED STATES ATTORNEY, Marquette, Michigan, for Appellee.

———————————

**OPINION**

———————————

     SUTTON, Circuit Judge. Sheldon Alexander, a long-time resident of the Hannahville-Potawatomi Indian Community, located in the upper peninsula of Michigan, violated the terms of his supervised release through a series of alcohol-related incidents, and the district court imposed a new sentence. Alexander challenges one of his new conditions of supervised release, which requires him to live in Grand Rapids, Michigan, for one year. Because a district court may require a defendant to "reside in a specified place or area," 18 U.S.C. § 3563(b)(13), and because the district court did not abuse its discretion in concluding that this condition "involves no greater deprivation of liberty than is reasonably necessary," *id.* § 3583(d)(2), we affirm.

1

I.

Alexander has a long history of alcohol abuse.  He began drinking at the age of 8, and alcohol has played a role in at least 19 of his 38 adult criminal convictions.  He admits that he is an alcoholic and that he drinks beer, brandy and whiskey "until he blacks out."  JA 89.  "Once I start," he says, "I can't stop."  *Id.*

On September 9, 2004, Alexander left a child support hearing with his girlfriend to go home to the Hannahville Indian community, where he has spent most of his life.  On the way back to Hannahville, he bought two 12-packs of beer and a fifth of whiskey, which he drank on the way and continued to drink with his girlfriend and sister at his girlfriend's home.  Alexander says that he cannot remember anything after that.  Later that night, it turns out, he beat his sister repeatedly, threw her on the floor and choked her until she became unconscious.

On October 13, a grand jury charged Alexander with assault resulting in serious bodily injury.  He pleaded no contest to the charge because "he was too drunk to even remember [the] incident."  JA 16.  Alexander received a sentence of 30 months' imprisonment and a three-year term of supervised release.  The court imposed several special conditions of supervised release, including prohibitions on using alcohol, associating with anyone using alcohol, entering any place where alcohol is served or consumed and "enter[ing] the Hannahville Indian Community without the prior approval of the probation officer."  JA 24.

After completing his sentence, Alexander left the custody of the Great Lakes Recovery Center in Marquette, Michigan, also located in the upper peninsula, to begin his supervised-release term at a facility in Marquette known as the Janzen House.  On December 8, 2006, the Janzen House evicted Alexander after he "had a few drinks" and brought an intoxicated woman back to his residence.  JA 44.  Alexander went to his mother's home in Hannahville and did not notify his probation officer until the next day.  While living with his mother in Hannahville, he "continued to drink" on at least two occasions.  JA 48.  Hannahville social services called his probation officer to report complaints that Alexander was using alcohol, and when the officer checked on him at his mother's house he admitted that he had consumed alcohol during his supervised release.  Hannahville police officers also called the probation officer to tell her that they found him "knocking on someone's door" at 6:00 a.m. after "he had been drinking and had been at the Island Resort and Casino[ in] Harris, Michigan."  JA 32.

On January 19, Alexander's probation officer sought a warrant for Alexander, alleging that he had violated the alcohol-related conditions of his supervised release and the condition requiring him to obtain approval before entering Hannahville.  The petition recommended modifying the conditions of supervised release by requiring Alexander to return to the Recovery Center for 60 days and to attend at least two Alcoholics Anonymous meetings each week.  The court issued the warrant and approved the recommended modifications.

Alexander agreed to the proposed modifications, and the government agreed to dismiss the petition without prejudice.  The probation officer wanted to avoid placing Alexander at the Recovery Center until a man who had allegedly raped Alexander's daughter completed his treatment program there.  The court advised Alexander that it would be "at least a few days, up to maybe a month or more," before he went to the Recovery Center.  JA 57.

Meanwhile, Alexander returned to Hannahville to stay with his mother.  He had no job at the time, and "his thoughts turned to drinking."  JA 49.  On March 6, officers arrested Alexander in Hannahville for public intoxication.  He had an immodest blood alcohol content of .262.

On March 9, Alexander's probation officer filed an amended petition for warrant or summons, repeating the earlier allegations of supervised-release violations and adding the March

6 incident. Alexander pleaded guilty and explained that he had violated his supervised-release conditions because he is an alcoholic.

Pointing out that "the supervised release conditions have not been sufficient to intervene and straighten this situation out" and noting Alexander's high risk of recidivism, JA 51, the court revoked Alexander's supervised release and imposed a new sentence of 12 months' imprisonment and 24 months' supervised release. The court required Alexander to stay in Grand Rapids for the first 12 months of supervised release, attend Alcoholics Anonymous at least three times per week and obtain employment. As the court explained:

> I want him away from Hannahville. I want him away from his drinking friends. I want him in a place where he can be watched, where he can have once again the availability of even more resources to assist him down in Grand Rapids. . . .
>
> Mr. Alexander, you are 36 years old. Unless you get a handle on this situation and we give you the resources to get a handle on this situation, you don't have long to live, frankly. Your liver's going to give out. You're not going to make it. . . . [I]t's for your good that I'm saying this matter has to be resolved. . . . I want this to come to a halt. No more Hannahville associations whatever. No more associations with people who are assisting you in this drinking enterprise which is going to kill you.

JA 52–53.

## II.

Alexander raises one challenge to his sentence: He claims that the geographical restriction on where he lives during the first 12 months of his supervised release amounts to a "greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). We disagree.

Neither party disputes the ground rules for resolving this matter. When a court revokes a defendant's term of supervised release, the new sentence may include an additional term of supervised release, *see* 18 U.S.C. § 3583(h), including a mandate that the defendant "reside in a specified place or area, or refrain from residing in a specified place or area," *id.* § 3563(b)(13); *see also id.* § 3583(h). A condition of supervised release must: (1) be "reasonably related," *id.* § 3583(d)(1), to "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and to the need to provide deterrence, to protect the public and to rehabilitate the defendant, *see id.* § 3553(a)(2)(B)–(D); (2) "involve[] no greater deprivation of liberty than is reasonably necessary" for deterring criminal conduct, protecting the public and rehabilitating the defendant, *id.* § 3583(d)(2); *see also id.* § 3553(a)(2)(B)–(D); and (3) be consistent with policy statements issued by the Sentencing Commission, *see id.* § 3583(d)(3). We review a court's imposition of a supervised-release condition for abuse of discretion. *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006).

Alexander concedes that the district court had authority to include a geographical restriction in the conditions of his supervised release, *see* 18 U.S.C. § 3563(b)(13), and he concedes that the restriction in this case "reasonably relate[s] to" the factors listed in § 3553(a)(1) and § 3553(a)(2)(B), (C) and (D), *id.* § 3583(d)(1). But because Grand Rapids, where the court has required him to live for the first 12 months of supervised release, is several hundred miles from Hannahville, where his child, other family members and friends live, he contends that the restriction is greater than necessary to address his drinking problems. *See id.* § 3583(d)(2).

No doubt, a district court should not lightly impose a geographical restriction as a condition of supervised release, and least of all one that takes a person several hundred miles from his family

and community.  But the district court did not impose this restriction lightly and indeed did not impose it until earlier conditions of supervised release, which did not contain such a restriction, had conspicuously failed.  Alexander committed the underlying crime in Hannahville, and he violated his supervised release in Hannahville and neighboring areas.  While this community may have been good to him, it has not been good for him.  The condition will further his rehabilitation efforts by temporarily removing him from the destructive influences that have plagued him in Hannahville and by attempting to take him out of the downward spiral into which his "drinking enterprise" has placed him.  JA 53.  As the district court found, living in a new city may help Alexander "get a handle on th[e] situation" so that he does not drink himself to his death.  *Id.*; *see also* 18 U.S.C. §§ 3583(d)(2), 3553(a)(2)(D); *United States v. Sicher*, 239 F.3d 289, 292 (3d Cir. 2000) ("[T]he territorial limitation is clearly intended to promote [the defendant's] rehabilitation by keeping her away from the influences that would most likely cause her to engage in further criminal activity.").  Not only does the restriction hold the potential to help Alexander conquer his drinking demons, but it also holds the potential to protect the community from future crimes as well, if indeed it can help Alexander halt his proclivity to backslide.  *See* 18 U.S.C. §§ 3583(d)(2), 3553(a)(2)(B)–(C).

Had this condition been imposed after Alexander committed his first federal offense, it might have raised a more difficult question about whether it "involve[d] no greater deprivation of liberty than is reasonably necessary" to serve the goals of deterrence, rehabilitation and public protection.  18 U.S.C. § 3583(d)(2).  But that is not what happened.  It became "reasonably necessary" to impose this greater restriction after the more limited restriction on entering Hannahville failed.  *See United States v. Brandenburg*, 157 F. App'x 875, 879–80 (6th Cir. Dec. 14, 2005) (upholding a special condition prohibiting the defendant from co-habitating with any female when a narrower restriction requiring the defendant to notify his probation officer of his social contact with females did not prevent him from committing domestic violence).

That greater restriction, moreover,  responded directly to the failing of the original requirement.  Alexander himself proved the limits of the initial restriction—that he obtain prior approval from his probation officer before entering Hannahville.  When the Janzen House evicted him for bringing home an intoxicated female, he returned to his mother's residence in Hannahville without his probation officer's approval and continued to drink in the area over the next month.  Even after Alexander agreed to several modifications, he again violated the conditions while living with his mother in Hannahville, where he was arrested for public intoxication.  On this record, the district court permissibly concluded that the circumstances demanded something more than Alexander's initial geographic restriction—both for the good of Alexander and for the safety of the community.

Nor, given Alexander's recidivist ways, is a temporary requirement that he live and obtain treatment in Grand Rapids overly restrictive.  The court permissibly struck a balance between the relevant statutory purposes and Alexander's liberty interests by temporarily removing him from the Hannahville area while permitting him to remain in the State of Michigan.  *See Sicher*, 239 F.3d at 292 (upholding a two-county restriction and distinguishing cases involving "unconditional banishment from the entire country . . . or from an entire state").  *Contrast United States v. Abushaar*, 761 F.2d 954, 958 (3d Cir. 1985) (holding that the district court abused its discretion by requiring, as a condition of probation, that the defendant remain outside the United States).  As Alexander's counsel acknowledged at oral argument, moreover, Grand Rapids is the next-closest location that could offer Alexander proper treatment and supervision—second only to Marquette, where Alexander already had violated his initial supervised-release conditions.

Alexander raises several challenges to this conclusion, each of which is unconvincing.  He contends that the court could have prohibited him from entering Hannahville or from residing in nearby counties.  In support of this contention, he points to *United States v. Sicher*, 239 F.3d 289 (3d Cir. 2000), which upheld as "no greater . . . than . . . necessary" a condition preventing the

defendant from entering two counties without her probation officer's permission. *Id.* at 289, 292. But when Alexander violated his initial supervised-release condition by entering Hannahville, he also proved that a condition prohibiting him from entering a specific area would not work. And as Alexander concedes, his "situation [is] substantially more egregious" than the probationer's in *Sicher.* Br. at 15. Alexander, indeed, already had committed five supervised-release violations when the government filed its first petition, and he committed an additional violation after the government dismissed that petition and modified his conditions. In the alternative, Alexander suggests that the court could have imposed a condition requiring him to reside in Marquette County, "the most populated county in the peninsula" and the home county of the Recovery Center. Br. at 18. But as Alexander showed when he lived in Marquette before, that location did little to assist him.

Alexander adds that living in Grand Rapids will deprive him of "meaningful contact with his mother, his siblings, his child or other supportive family members," all of whom live in or near Hannahville. Br. at 10. He will not be able to visit them, he says, and it will take his family a full day to drive to Grand Rapids. While all of this will assuredly be inconvenient for Alexander and his family, Alexander's appellate papers are conspicuously short on other alternatives that would meaningfully address his prior failings. It may well be, moreover, that this 12-month hiatus from the area will help all concerned. Indeed, it is well to remember that he was surrounded by his family when he committed most of his supervised-release violations—in fact, he was living with his mother during a large majority of the time. Under these circumstances, we cannot say that the district court abused its discretion by attempting to find a new, reasonable treatment plan to help Alexander get back on his feet.

III.

For these reasons, we affirm.