NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0192n.06

No. 16-2361

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 29, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| EUGENE WALTER GEORGE RANTANEN, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:      BOGGS, ROGERS, and COOK, Circuit Judges.

BOGGS, Circuit Judge.  Exile is not a pleasant experience.[1]  Yet its purpose in the case before us was less punitive than preventive.  Eugene Rantanen repeatedly broke the conditions of his supervised release, leading to a number of modifications to those conditions and returns to custody.  Many of these violations involved drugs, alcohol, or persons in Baraga County, Michigan.  At his latest sentencing for violating his supervised-release conditions, Rantanen acknowledged that living in Baraga County was proving ruinous for his ability to return to the straight and narrow path.  Rantanen informed the sentencing judge that he needed to remove himself from Baraga County to make the right decisions, become a better person, and avoid the

---

[1] *See, e.g.*, Psalm 137:1–6 ("By the rivers of Babylon, there we sat down, yea, we wept, when we remembered Zion. . . . If I forget thee, O Jerusalem, let my right hand forget her cunning." *Id.* 1, 5.); Ovid, *Tristia* III.53–54 (c. A.D. 10) ("When I lost my homeland, think of that as when I perished: it was an earlier and harder death to me."); Dante Alighieri, *Paradiso* XVII.55–57 (1321) ("You will leave every beloved thing you hold most dear; and this is that arrow the bow of exile shoots first."); William Shakespeare, *Romeo and Juliet* act 3, sc. 3 ("ROMEO: . . . [B]e merciful, say 'death;' For exile hath more terror in his look, Much more than death: do not say 'banishment.'").

temptations that had diverted him in the past. The district court obliged, finding that keeping

Rantanen out of Baraga County was essential and was no greater a restriction than necessary.

The court imposed a sentencing condition barring him from the county for all purposes. Having

entreated the court to remove him from Baraga County, Rantanen appears to have had second

thoughts. He now requests that we vacate the condition keeping him from Baraga County.

Nevertheless, we affirm the district court's sentence.

I

Eugene Walter George Rantanen was having trouble keeping the terms of his supervised

release. He was initially charged and convicted of sexual abuse of a minor in Indian country

after a trial in December 2009.[2] *See* 18 U.S.C. § 2243(a). Pending sentencing, he was released

on bond with a number of conditions, including not to use or possess any alcohol, not to contact

certain witnesses and victims or their family members, and to follow certain electronic-

monitoring restrictions. Two months later, Rantanen violated the terms of his bond by leaving

his residence without authorization. When contacted by probation officers who were monitoring

him remotely, Rantanen became belligerent and told them to "send the marshals"; he was later

found with a blood-alcohol content of .33 percent (over four times the legal limit for driving in

Michigan). A warrant was issued for Rantanen's arrest for violating the terms of his bond by

drinking alcohol and noncompliance with his electronic-monitoring schedule. He was arrested in

Baraga, Michigan, and held until his sentencing hearing. At sentencing, the court noted his

history of frequent violations of court orders and sentenced him to fifty-seven months'

imprisonment, to be followed by a ten-year period of supervised release. He appealed his

---

[2] The behavior for which Rantanen was convicted was consensual sexual acts with his minor girlfriend when she was fourteen years old and he was eighteen. An applicable federal law prohibits any such acts on Indian territory where the parties have an age difference of four years or more; here, the age difference was about four years and three months. 18 U.S.C. § 2243(a)(2); *United States v. Rantanen*, 467 F. App'x 414, 416 n.1 (6th Cir. 2012).

conviction and sentence, and we affirmed both. *United States v. Rantanen*, 467 F. App'x 414 (6th Cir. 2012). Rantanen completed his prison sentence in November 2013 and thereafter began his ten years of supervised release.

On June 19, 2014, Rantanen was arrested in L'Anse, Baraga County, Michigan, on allegations of having assaulted his then-girlfriend, interfering with her attempt to communicate with police, failing to attend substance-abuse and sex-offender treatment, using controlled substances, and associating with a felon: all of which were violations of his supervised release. He admitted guilt as to the failure to attend treatment, association with a convicted felon, and two use-of-controlled-substances violations, and was found in violation of two additional use-of-controlled-substance violations. The court found that Rantanen had not interfered with his girlfriend's attempt to communicate with police, and the prosecution dismissed the other violation allegations. As a result of the violations, Rantanen was sentenced to 11 months in custody and 120 months of supervised release to follow.

In January of 2015, he pleaded guilty to three counts of contempt of court for violating a no-contact order issued by the court by sending letters to his girlfriend while he was incarcerated. He was given an additional four months of incarceration to be served consecutive to his eleven-month sentence, and an additional consecutive four-month period of probation. Seven months later, Rantanen failed to pay for his probation program and was sentenced to six more months of incarceration. In December of 2015, Rantanen's sentence was further modified to restrict him to a single prescribing doctor because of concerns regarding his circumventing orders intended to monitor his medication use.

The latest chapter of this saga began in August 2016, when the government once again sought to revoke Rantanen's supervised release. The government alleged that Rantanen had

attempted to steal a boat in July 2014 while intoxicated, resisted a police officer, used alcohol on six occasions in a two-and-a-half-month span, possessed and used fentanyl (a potent opioid), and assaulted a man in Baraga, Michigan. Rantanen admitted all violations except the assault allegation, which was dismissed. At sentencing, he indicated his desire to be placed somewhere outside of Baraga County, which he believed was contributing to his continued violation of his supervised release conditions: "I've got to remove myself from that area." Specifically, he noted that the lack of employment and the long travel distances required to receive treatment meant that he was disposed to return to his bad habits. Rantanen's counsel also noted an assessment where a doctor at Rantanen's previous treatment facility observed that:

> "Mr. Rantanen seems to do good for a while and then make some type of poor choice that gets him re-involved with the legal system. Although he talks a good game, it seems he still is impulsive." . . .
> After he is done with whatever additional prison time, he would do well not to return to the Baraga County area, and there are a lot of bad influences awaiting him there.

Rantanen's supervised release was revoked and he received a fourteen-month sentence for the violations and a new supervised release period of eight years and ten months. The district court agreed with Rantanen that "Baraga County is not the place for him." Accordingly, the court added as a condition of supervised release that Rantanen would be "bar[red] . . . from that county, for all purposes." The district court found that the supervised-release conditions "involve[d] no greater deprivation of liberty than is reasonably necessary for the purposes of sentencing." Rantanen did not object to any of the conditions, but timely appealed his sentence.

## II

Although sentencing conditions are usually reviewed for an abuse of discretion, where (as here) a defendant declined to object to the condition after being asked whether he wanted to do so, our review is for plain error. *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012). In

order for an appellate court to reverse for plain error, there must have been "(1) an error, (2) that was obvious or clear, (3) that affected [the defendant's] substantial rights, and (4) that affected the fairness, integrity, or public reputation of his judicial proceedings." *United States v. Inman*, 666 F.3d 1001, 1003–04 (6th Cir. 2012) (per curiam). When reviewing a sentencing condition of supervised release, we initially "determine whether the district court adequately stated in open court at the time of sentencing 'its rationale for mandating [the] special conditions.'" *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007) (quoting *United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006)). Next, we determine "whether the 'condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public.'" *Ibid.* (quoting *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997)). We also ensure that the condition:

> (1) is reasonably related to the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes indicated in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

18 U.S.C. § 3583(d).

The district court made clear that the rationale for its special condition (the ban from Baraga County) was to remove Rantanen from an environment that he admitted was detrimental to his ability to meet his legal obligations. Geographical limitations are expressly permitted as special conditions, as are "any other condition[s] [a district court] considers to be appropriate." 18 U.S.C. § 3583(d); *see also id.* § 3563(b)(13) (permitting conditions that require defendants to "refrain from residing in a specified place or area"). With regard to whether the condition is reasonably related to the relevant § 3553 factors,[3] it is quite plain that the condition has a

---

[3] Those factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); (2) the need to afford adequate deterrence to criminal conduct, *id.*

reasonable connection to the factors. Rantanen had a history of violating court orders and conditions and attributed this history to his time in Baraga County. The condition was aimed to take account of this history and to promote effective treatment as well as to protect the public (and the defendant himself) from future crimes that seemed likely to occur if Rantanen remained in Baraga County. If doing the same thing repeatedly failed to bring about different results, then the district court was certainly reasonable in considering Rantanen's recurring violations and in desiring to change one constant factor in his actions, hoping to achieve a better outcome for both Rantanen and the public.

Recognizing this, Rantanen directs his argument at the deprivation of his liberty, contending that the absolute nature of his exclusion from Baraga County is greater than is reasonably necessary. He cites a number of cases that permitted special conditions excluding defendants from an area or requiring them to remain in a specific area in order to distinguish them from this case. *See United States v. Watson*, 582 F.3d 974 (9th Cir. 2009); *United States v. Alexander*, 509 F.3d 253 (6th Cir. 2007); *United States v. Sicher*, 239 F.3d 289 (3d Cir. 2000). Those cases, he argues, had allowed some method of accessing the forbidden zone with permission of a probation officer, whereas the ban in this case prevents him from returning to Baraga County for any purpose: to visit family and his tribe[4]; to participate in festivals or religious ceremonies; or to attend funerals. Such a total bar, he asserts, is greater than is reasonably necessary, and he offers as alternatives an exclusion from Baraga County with an exception for permission by a probation officer or further order of the court or even an expansion of the geographic prohibition to the Upper Peninsula with the same two exceptions.

---

§ 3553(a)(2)(B); (3) the need to protect the public from further crimes of the defendant, *id.* § 3553(a)(2)(C); and (4) the need to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner, *id.* § 3553(a)(2)(D).

[4] Rantanen is a member of the Keweenaw Bay Indian Community, whose lands are mainly located in Baraga County, with some land in Marquette County.

We are acutely aware that "a district court should not lightly impose a geographical restriction as a condition of supervised release, and least of all one that takes a person several hundred miles from his family and community." *Alexander*, 509 F.3d at 256. But, as with the defendant in *Alexander*, earlier attempts to fashion supervised-release conditions that would rehabilitate Rantanen and protect the public had unquestionably failed. Rantanen accrued numerous violations on multiple occasions and continued to fall into the same patterns that led him to disregard or defy his special-release conditions. Although Rantanen's latest violations occurred in nearby Delta County rather than in Baraga County, the district court can hardly be criticized as imposing too great a restriction by barring Rantanen from only Baraga County rather than from the entire Upper Peninsula. Rantanen, his lawyer, and his doctor all agreed that Baraga County was harmful to him and that living there was contributing to his problems.

Rantanen argues that the duration of the condition is greater than necessary. A similar case from the First Circuit is instructive. In *United States v. Garrasteguy*, 559 F.3d 34 (1st Cir. 2009), the First Circuit, also reviewing for plain error, upheld a ban of two defendants from Suffolk County, Massachusetts (which includes the city of Boston), for the rest of their terms of supervised release—eight and twelve years, respectively. *Id.* at 43. That case, unlike the Fourth and Ninth Circuit cases cited by Rantanen, did not have an exception for permission by a probation officer. Instead, like this case, the only possibility for relief was 18 U.S.C. § 3583(e), which permits a court to modify conditions of supervised release. Like the First Circuit, we are uneasy at the length of the condition (here, nearly nine years) without any exceptions; the Sixth Circuit's *Alexander* case involved a one-year restriction. But Rantanen's violations were worse than the no-trespass-order violations that were the basis of the condition in *Garrasteguy* and more numerous than those in *Alexander*: Rantanen was using drugs and alcohol and then

committing crimes while under their influence. He had a history of repeatedly violating court orders and making poor decisions in Baraga County. According to Rantanen himself, he was "thriv[ing] in other areas other than Baraga," but fell off the wagon sometime after he returned home due to a family member becoming ill. It may well be that a clean break from Baraga County is necessary. Should the situation change, whether through demonstrated rehabilitation or family emergency, a district court may be inclined to modify the condition, so long as the modification still meets the requirement that it is reasonably related to Rantanen's rehabilitation and the protection of the public. *See United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997). But on plain-error review, we cannot find any obvious error in the sentence, nor does it affect the fairness, integrity, or public reputation of Rantanen's judicial proceedings.

## III

For the foregoing reasons, we affirm the district court's sentence.