NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0349n.06

No. 19-2021

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| PETER LOUIS MESHIGAUD, | ) | COURT FOR THE WESTERN |
| Defendant - Appellant. | ) | DISTRICT OF MICHIGAN |
|  | ) | |

Before:  CLAY, WHITE, and READLER, Circuit Judges

HELENE N. WHITE, Circuit Judge.  After serving a sentence of imprisonment for domestic assault, Defendant-Appellant Peter Louis Meshigaud admitted to violating a condition of his supervised release.  He was then sentenced to an additional term of imprisonment and supervised release with new special conditions.  Meshigaud appeals, challenging a special condition that bars him from entering two Michigan counties and an Indian community without the permission of a probation officer.  We affirm.

**I.**

Meshigaud is a member of the Hannahville Indian Community, a federally recognized tribe located near Escanaba, Michigan.  In 2014, a grand jury indicted Meshigaud for committing domestic assault on "J.M.," with whom he cohabitated on tribal land and shares a child.  R. 1, PID 1.  He pleaded guilty and was sentenced to sixty months' imprisonment and three years' supervised

release. As a special condition of supervision, the court ordered Meshigaud not to use or possess any alcoholic beverage.

Meshigaud began his supervised release on February 23, 2018. On October 26, 2018, the United States Probation Office ("Probation") filed a petition alleging that Meshigaud had violated the conditions of his supervision by committing domestic assault and sexual abuse against J.M. Probation then amended its petition, adding a violation for the consumption of alcohol. The parties agreed that Meshigaud would admit to the alcohol violation and the remaining violations would be dismissed.

At a hearing before a magistrate judge, Meshigaud admitted to consuming alcohol and waived his right to allocution and sentencing before a district judge. During the sentencing hearing, Meshigaud's counsel noted that there was "still an outstanding personal protection order against JM, so [Meshigaud] would not be able to have contact through that order." R. 80, PID 453. When asked if anything suggested that Meshigaud would not repeat his alcohol use, Counsel responded, "[Meshigaud] admits he drank at the casino. I don't even really understand why they would even serve him, knowing that he is not allowed to consume alcohol, . . . he works for the casino security . . . . So I think we could put them on notice." *Id.* at 460-61. Counsel continued that Meshigaud was doing well at work and argued that "taking him away from that reservation, where he could have that job" would not be in anyone's best interest. *Id.* at 463. Counsel further noted that Meshigaud wants to be involved in the lives of his three young children and to support them financially. Counsel suggested that Meshigaud could "do some outpatient rehab," stay at Great Lakes Recovery Center, or reside off the Hannahville reservation with his uncle "at a tribal subsidized sober living environment in which, as part of the requirements to live there, you have to go to a counselor . . . . It has multiple cameras and it has police involvement at the living center."

*Id.* at 464. Similarly, Meshigaud stated that he had been promoted at work and enrolled in college and that he wanted "nothing more than to be able to have some type of relationship with [his] children." *Id.* at 466. Meshigaud suggested that he spend time at the Great Lakes Recovery Center so that he could maintain contact with his family and reside in Escanaba, "somewhere away from the reservation." *Id.* at 467.

The magistrate explained, "My big concern is releasing him back into that community because I think that's a dangerous situation and not good for his rehabilitation." *Id.* at 458. "[Meshigaud's] criminal history suggests he drinks, he gets violent, he has problems, which suggests to me, he has surrounded himself with a network of friends that encourage that, or don't discourage it." *Id.* at 462. The magistrate further explained, "I want to fashion a sentence that's going to give you an opportunity to turn your life around, but I also want to fashion a sentence which is going to provide you with an opportunity to see your kids." *Id.* at 471. The magistrate then recommended a sentence of ten months' custody with credit for time served, followed by twenty-four months' supervision with discretionary conditions, including a prohibition against entering Delta County, Menominee County, and the Hannahville Indian Community without the permission of a probation officer.

Meshigaud filed an objection to the magistrate's report and recommendation with the district court. The district court rejected the objection to the special condition, explaining that "the geographical exclusion reasonably relates to the nature of the offense and the history and characteristics of the defendant, and involves no greater deprivation of liberty than is reasonably necessary to deter criminal conduct, protect the public, and foster rehabilitation." R. 90, PID 507. The district court adopted the magistrate's report and recommendation as its opinion. Meshigaud appeals.

**II.**

Meshigaud argues that the district court committed clear error by ordering that he not enter Delta County, Menominee County, and the Hannahville Indian Reservation without the permission of his probation officer. "We review the imposition of a supervised-release condition for abuse of discretion." *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* (quoting *U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp.*, 400 F.3d 428, 450 (6th Cir. 2005)).

Our review has a procedural and a substantive dimension. *Id.* at 528–29. As a matter of procedure, "the Court must determine whether the district court adequately stated in open court at the time of sentencing 'its rationale for mandating special conditions of supervised release.'" *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007) (quoting *Carter*, 463 F.3d at 528–29). Meshigaud does not make any argument regarding procedure and the magistrate adequately stated his rationale at the sentencing hearing.

Substantively, the sentencing court may order any "condition it considers to be appropriate," 18 U.S.C. § 3583(d), subject to three requirements:

> First, the condition must be "reasonably related to" several sentencing factors. 18 U.S.C. § 3583(d)(1). These factors are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D). Second, the condition must "involve[ ] no greater deprivation of liberty than is reasonably necessary for" several sentencing purposes. 18 U.S.C. § 3583(d)(2). These purposes are "to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care

or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(B)-(D). Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3). Because they are written in the conjunctive, a condition must satisfy all three requirements. *See* 18 U.S.C. § 3583(d)(1)-(3). However, a condition need not satisfy every single factor and purpose within each of the first two requirements.

*Carter*, 463 F.3d at 529–30 (alterations in original) (citations and footnote omitted).

Meshigaud argues that the "banishment provision . . . is not reasonably related to the nature and circumstances of his crime" and "involves a greater deprivation of liberty than is reasonably necessary." Appellant's Br. at 13. The government responds that the "district court carefully balanced [] Meshigaud's liberty interests and the rehabilitative goals of supervision" because "Meshigaud can still meet his family in a nearby county, and he can still enter the restricted area with prior permission from his probation officer." Appellee's Br. at 25.

We previously considered an argument similar to Meshigaud's advanced by "Sheldon Alexander, a long-time resident of the Hannahville–Potawatomi Indian Community, located in the upper peninsula of Michigan." *United States v. Alexander*, 509 F.3d 253, 254 (6th Cir. 2007). Alexander "violated the terms of his supervised release through a series of alcohol-related incidents, and the district court imposed a new sentence." *Id.* Alexander then challenged "one of his new conditions of supervised release, which require[d] him to live in Grand Rapids, Michigan, for one year." *Id.* Alexander argued that "because Grand Rapids . . . is several hundred miles from Hannahville, where his child, other family members and friends live, . . . the restriction [was] greater than necessary to address his drinking problems." *Id.* at 256. We disagreed and concluded that the "court permissibly struck a balance between the relevant statutory purposes and Alexander's liberty interests by temporarily removing him from the Hannahville area while permitting him to remain in the State of Michigan." *Id.* at 257. We reasoned that the restriction

had "the potential to help Alexander conquer his drinking demons" and "to protect the community from future crimes." *Id.*

Meshigaud argues that we can distinguish *Alexander* because he "has had only one conviction for violation of his supervision . . . for drinking." Appellant's Br. at 19. But as in *Alexander*, the geographic restriction "responded directly to the failing of the original requirement." 509 F.3d at 257. The geographic restriction was not imposed until Meshigaud demonstrated he was unable to comply with the alcohol restriction. Meshigaud further argues that "[t]he use of alcohol has not been determined to be connected to his living situation" and that "[h]e is an alcohol abuser whether he is in Marquette or Hannahville." Appellant's Br. at 19. However, the magistrate determined that Meshigaud "surrounded himself with a network of friends" that facilitated his behavior and that returning to the area would be "a dangerous situation and not good for his rehabilitation." R. 80, PID 462, 458. That determination was supported by the statement by Meshigaud's counsel that he drank at the casino, his place of employment, and was served by individuals who knew that he was prohibited from drinking. The restriction is therefore reasonably related to the nature of Meshigaud's crimes. Further, the condition imposed on Meshigaud is less geographically restrictive than the one upheld in *Alexander*. While Alexander was required to stay in Grand Rapids for twelve months, hundreds of miles from his family, Meshigaud may enter the restricted area with the approval of his probation officer and may live less than one-hundred miles from his old home.

Meshigaud makes a similar argument regarding *United States v. Sicher*, 239 F.3d 289 (3d Cir. 2000). In that case, Sicher appealed "from the District Court's denial of her motion to set aside a special condition of supervised release which prevent[ed] her from entering Lehigh and Northampton counties, in Pennsylvania, without permission from her probation officer." *Id.* at

289. The district court considered "substantial evidence concerning the conditions under which she was raised and her activities prior to incarceration" including a forensic psychologist's report. *Id.* at 290. The Third Circuit upheld the special condition because it was "related to Sicher's history and characteristics, involve[d] no greater deprivation of liberty than [was] necessary, and [was] not inconsistent with the pertinent policy statements issued by the Sentencing Commission." *Id.* at 289.

Meshigaud argues that "there was ample evidence that if Sicher returned to the location and associates that shaped her youth, she would be likely to return to a life of crime," but removing him from Delta and Menominee Counties is not rationally related to keeping him from alcohol, which "is available in every [county] and on every Indian reservation in Michigan." Appellant's Br. at 13–14. But the ampleness of the evidence in *Sicher* does not undermine the sufficiency of the evidence here. Further, the point of the restriction is not to keep Meshigaud geographically separated from alcohol, which, as he suggests, would be difficult to accomplish, but to keep him away from a specific environment in which he was unable to comply with the terms of his supervised release.

Meshigaud further argues that he "has not had an opportunity to go to treatment and address his alcohol issues," suggesting this would have been a lesser deprivation of liberty. Appellant's Br. at 19. However, sending Meshigaud to a treatment facility inside Delta or Menominee County would do little to relieve the concern that living in the area is counterproductive to his rehabilitation. Further, the special condition neither prevents him from seeking treatment outside the restricted area nor categorically bars him from seeking treatment inside that area as he may do so with his probation officer's approval.

Meshigaud also briefly contends that "[h]e has a due process right to be a father." Appellant's Br. at 17. "[R]estrictions infringing upon fundamental rights are 'reviewed carefully.'" *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007) (quoting *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988)). But "'[e]ven individual fundamental rights safeguarded by the United States Constitution may be denied or limited by judicially exacted special conditions of supervised release, as long as those restrictions are directly related to advancing the individual's rehabilitation' and preventing recidivism." *United States v. May*, 568 F.3d 597, 608 (6th Cir. 2009) (alteration in original) (quoting *United States v. Kingsley*, 241 F.3d 828, 839 n.15 (6th Cir. 2001)). It was not a clear error of judgment to conclude that restricting Meshigaud's ability to visit places and people that had facilitated his conduct would advance his rehabilitation and prevent his recidivism.

"No doubt, a district court should not lightly impose a geographical restriction as a condition of supervised release, and least of all one that takes a person . . . from his family and community." *Alexander*, 509 F.3d at 256. But, as in *Alexander*, "the district court did not impose this restriction lightly," and it did not abuse its discretion in determining that the restriction reasonably relates to the § 3553(a) sentencing factors and involves no greater deprivation of liberty than is reasonably necessary. *Id.* Further, the order allows visitation as approved by the probation officer.

**III.**

Based on the foregoing, we affirm the judgment of the district court.